1  Susan Carlsen
2  104 Segovia Way
3  Jupiter  FL  33458

FILED by ___ D.C.

SEP 2 9 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

4          UNITED STATES DISTRICT COURT
5          SOUTHERN DISTRICT OF FLORIDA

**Susan Carlsen**

Plaintiff,

vs.

**GMAC Mortgage**

Defendant

Case # 10-80987-CIV-Vitunac

**MORE DEFINITE STATEMENT**

6                          Date:  September 29 2010

7        Comes now Susan Carlsen, hereinafter referred to as "Petitioner," and moves the court

8    for relief as herein requested:

9                                    **PARTIES**
10       Petitioner is Susan Carlsen, 104 Segovia Way,  Jupiter  FL 33458.  Currently Known

11   Defendant(s) are/is:  GMAC Mortgage , 3451 Hammond Ave , IA  50704, by and through its

12   attorney .

13                              **STATEMENT OF FACTS**
14       Plaintiff and seller engaged the services of Pacific Capital Mortgage, Inc, as a mortgage

15   broker, hereinafter referred to as "Broker," to assist Plaintiff and seller in the sale of the property.

16       Plaintiff  was  referred  to  Green  Point  Mortgage  Funding/GMAC  Mortgage,  Inc,

17   hereinafter referred to as "Lender," by Broker for the purpose of financing the intended sale of

18   the property.

19       Lender engaged the services of an Appraiser, hereinafter referred to as "Appraiser," to

20   prepare an appraisal of the then current value of the property.

21       Lender  engaged  the  services  of  Universal  Land  Title,  Inc  hereinafter  referred  to  as

22   "Closing Agent," to perform the closing on the sale of the property.

23       On the 9 day of June, 2006, Plaintiff entered into a contract loan with Lender, said

24   contract is hereinafter referred to as the "note."

25       On the day of closing on the property, Closing Agent provided the Truth in Lending

26   Statement and Housing and Urban Development Form 1, otherwise known as the "settlement

27   statement."

28       At closing on the property, Lender assessed fees as listed on the settlement statement.

29          The fees assessed on the settlement statement were as follows:

| | | |
|---|---|---|
| 809 | Funding Fee | $230.00 |
| 810 | Tax Service Fee | $79.00 |
| 811 | Flood Certification Fee | $11.00 |
| 812 | Underwriting Fee | $295.00 |
| 901 | Interest from 6/14/2006 to 7/1/2006 | $3,609.61 |
| 1101 | Settlement or closing fee to | $25.00 |
| 1102 | Abstract or title search fee | $25.00 |
| 1103 | Title Examination Fee | $25.00 |
| 1106 | Notary Fees | $200.00 |
| 1108 | title insurance fee | $3,055.00 |
| 1109 | wire service fee | $25.00 |
| 1110 | FL form 9 | $305.50 |
| 1111 | Alta 8.1 endorsement fee | $25.00 |
| 1112 | Alta 6.2 endorsement fee | $25.00 |
| 1113 | Alta 5/5.1 endorsement PUD fee | $25.00 |
| 1201 | Recording Fee | $240.10 |
| 1202 | City/county tax/stamp | $2,000.00 |
| 1203 | State tax/stamps | $3,500.00 |
| 1205 | Sat. Servicing Fee | $25.00 |
| 1206 | Record quit claim deed fee | $10.60 |
| 1207 | Doc stamps on quit claim deed | $4,220.20 |

30

31          The fees assessed on the settlement statement were added to the principal on the note and

32   interest was charged to Plaintiff on said amounts.

33          Plaintiff provided to Lender, at the time of the consummation of the note, a document

34   witch established a lien against the property.

35          Said lien document specifically stated that it was intended to protect Lender from loss if

36   Plaintiff failed to abide by the promises made in the note.

37          Within days after the consummation of the above referenced note, Lender traded the note

38   to an investor, hereinafter referred to as "Initial Investor," for consideration accepted (identity of

39   Initial Investor, at the time of the filing of this complaint is unknown to Plaintiff, but will be

40   provided subsequent to discovery).

41          At the sale of the note to Initial Investor, Lender bi-furcated the note and lien by retaining

42   possession of the lien while transferring possession of the note to Initial Investor.

43          Plaintiff was not noticed of said subsequent sales of the note.

44          The note was subsequently sold repeatedly to other parties who failed to properly register

45   said sales with the court recorder's office in the county in which the property lies.

46          After sale of the note, Lender became the servicer of the note, in that Lender contracted

47   with the Initial Investor who was the real party in interest on the note at the time of sale to collect

48   the monthly payments made on the note.

49       **STATEMENT OF FACTUAL ACCUSATION**

50       Plaintiff alleges and is prepared to prove at trial each of the following:

51   **FRAUD BY LENDER**

52       Lender conspired with the Broker, to induce Agent to violate Agent's fiduciary duty to

53   Plaintiff while acting as an agent for Plaintiff in securing funds to purchase a residential

54   property. *(Since all actors in a conspiracy act in pari delicto, and, thereby, are equally culpable*

55   *for the acts of each, Plaintiff did not name Agent, Appraiser, Underwriter, Closing Agent, et, as*

56   *said actors are not necessary parties. In the interest of judicial economy, Plaintiff only*

57   *specifically named the party presently claiming agency and standing to enforce the note. If said*

58   *defendant has reason to believe that others are liable to defendant, defendant is certainly free to*

59   *cross-complain against said actors in order to lessen the potential claim against defendant.)*

60       Lender, in an act of fraud, represented the property, the current real estate market, the

61   loan product of Lender, and other conditions of the prospective purchase as far more favorable

62   than they actually were at the time said representations were made. Lender knew, or should have

63   known, that said representations were not accurate or were misleading. Lender made said

64   representations to Plaintiff with the intent that Plaintiff make a decision to purchase. Plaintiff did

65   not have equal access to information as Lender as Plaintiff was not a real estate professional.

66   Plaintiff had reason to trust Lender as Lender was licensed to do business. Said license was

67   sufficient to give Plaintiff a reasonable expectation of good faith and fair dealings on the part of

68   Lender. Lender knew, or should have known that if Plaintiff had full disclosure of all the facts

69   Plaintiff would have made a different decision than the decision Plaintiff made. Plaintiff was

70   subsequently harmed by the decision Plaintiff was fraudulently induced to make by Lender.

71   **FAILED TO MAKE CONSPICUOUS DISCLOSURES**

72       Broker, Appraiser, Closing Agent, and Lender failed to make all disclosures to Plaintiff

73   clearly and conspicuously as required by 12 CFR 226.17(a). The above referenced defendants

74   crafted disclosures in turgid and confusing language, laced with undefined terms of art (legalese)

75   and grouped with many unnecessary and confusing documents for the purpose of rendering the

76   disclosures unintelligible to a reasonable person of ordinary knowledge and understanding of the

77   English language. Lender failed to disclose to Plaintiff that the words and phrases used in the

78   documents put before Plaintiff carried meanings not consistent with those terms as used in

79   normal common speech, but rather were therein used as terms of art, having special legal

80   definitions not made clear to Plaintiff. The above referenced failure defrauded Plaintiff by

81    effecting a lack of full disclosure to Plaintiff which unduly induced Plaintiff to enter into the
82    contract herein referred to as the note.

83        **i.    Truth In lending statement not timely**

84    Lender failed to provide a Truth in lending statement at least three days before closing in
85    violation of 12 CFR 226.31(c)(1). Plaintiff alleges that the failure on the part of Lender to provide
86    the required disclosure was an act in concert with other acts perpetrated here intended to mislead
87    and defraud Plaintiff. Plaintiff understands the statutory limitations on the court concerning the
88    assessment of civil penalties under the Truth in Lending Act. Plaintiff is not so concerned with
89    the acts of Lender as they relate to the imposition of said penalties, but rather, as they relate to a
90    pattern of lack of intentional non-disclosure intended to defraud Plaintiff.

91        **ii.    Terms for the note changed at closing**

92    The terms for the note were changed at closing without prior notice to Plaintiff in
93    violation of 21 CFR 226 (c)(1)(i). When Plaintiff objected to the trustee at closing, Plaintiff was
94    told to either take it or leave it. This was a deliberate act on the part of Lender to induce Plaintiff
95    to so arrange Plaintiff's affairs so that the purchase of the property became a personal and
96    financial necessity, thereby, placing improper undue pressure on Plaintiff in order to force
97    Plaintiff to accept conditions Plaintiff would never have agreed to absent the fraudulent failure to
98    timely disclose said changes.

99        **iii.    Disclosures did not reflect terms**

100    The disclosures to provided Plaintiff by Lender did not accurately reflect the closing
101    amounts and did not clearly state that the disclosures were estimates in violation of 12 CFR
102    226.31(d)(1). Lender, in making verbal and written disclosures to Plaintiff, gave partial
103    disclosure, but failed to give full disclosure in that Lender failed to disclose that the disclosures
104    were only estimates. It is the further allegation of Plaintiff that said disclosures were deliberately
105    misconstrued in a pattern of conduct engaged in by the broker, appraiser, underwriter, trustee,
106    and lender for the purpose of inducing an unsophisticated consumer to enter into a predatory loan
107    product on which Lender intended to foreclose.

108        **iv.    Per Diem interest not accurately disclosed**

109    Lender failed to provide documentation to show that the calculation of the per diem
110    interest was true and accurate in violation of 12 CFR 226.3(a)(ii).

111 ***IMPROPERLY CHARGED FEES***

112      Lender, at closing, charged fees to Plaintiff that were totally false in some instances and

113 intended to be included in the finance charge in other instances.

114      **i.    False Fees**

115      Lender charged fees to Plaintiff for services never provided and that Lender added said

116 false fees to the principal of the note with the intention, not only of collection the fees

117 improperly, but also, in as much as any extra fee added to the principal at closing will effectively

118 be the last amount paid, Lender intended to collect interest on said fees for the full term of the

119 note.  It is a common practice of lenders to add what is called "junk" fees to the Housing and

120 Urban Development Form 1 document hereinafter referred to as "settlement statement." *(see*

121 *attachment labeled Exhibit B)*  Plaintiff, subsequent to the discovery of documentation from

122 Lender, Plaintiff will prove that certain of the fees assessed on the settlement statement lack

123 documentation as they were never performed or paid for by Lender and, therefore, the

124 assessment of said fees were acts of fraud against Plaintiff.

125      **ii.    Fees not allowed to be assessed on settlement statement**

126      Lender assessed fees to Plaintiff at closing as listed on the settlement statement.  As

127 indicated above, certain of these fees were intended to be part of the finance charge and were

128 intended to be paid from the interest charged to Plaintiff.  Instead of absorbing said costs as the

129 normal part of doing business, Lender improperly assessed said charges to Plaintiff, added said

130 charges to the original principal, and intended to charge plaintiff interest on said charges for the

131 full term of the note.

132      Plaintiff was induced to accept the fees a genuine and proper because of the licensed

133 status of the closing agent.  Plaintiff, by virtue of said licensed status, had cause to hold a

134 reasonable expectation of good faith and fair dealings from Defendant agent, Lender, and closing

135 agent.

136      The amount of overpayment on the note Lender intended Plaintiff pay over the term of

137 the note would be in the amount of $168,277.89.

138      Said improper charges include, but are not limited to charges by third parties which are

139 not otherwise excluded under 12 CFR 226.4(a)(1)(i)).   Lender required the use of said third

140 parties as a condition of or an incident to the extension of credit which included, but is not

141 limited to charges for appraisers, inspectors, underwriters, and others to be determined

142 subsequent to discovery.  Said fees, as demonstrated above, were forbidden to be charged to

143 Plaintiff.  While the civil penalty for said violations of the Truth in Lending Act appears to have

144  ran, and even if the court discounts equitable tolling of the statute of limitations for the
145  imposition of said penalties, the charges to Plaintiff that were added to the principal which
146  Plaintiff was intended to pay and which improperly increased the cost to lender as indicated
147  above, amount to a criminal fraud against Plaintiff.  Regardless of the covenants of the contract,
148  the above referenced false fees ring in tort against Lender.

149  **CONSPIRACY TO FALSE FEES**

150      It is the further allegation of Plaintiff that Lender charged false fees at closing which
151  were added to the original principal on which interest was charged.  It was intended that above
152  referenced costs be considered the normal part of doing business and be absorbed in the finance
153  charge.  Instead, Lender added said fees to the head of the note, then used said fees to bribe
154  Broker to up sell *(convince the buyer to accept an artificially high priced loan product)* the note
155  to Plaintiff, thereby, charging Plaintiff for the bribes Lender used to defraud Plaintiff.  Instead of
156  absorbing said fees in the finance charge, Lender intended to charge interest on said fees for the
157  full term of the note.  Plaintiff was harmed by said act by being charged extra fees, thereby,
158  increasing the cost of the note.

159  **CONSPIRACY BETWEEN LENDER AND APPRAISER**

160      Lender conspired with Appraiser to present an inaccurate appraisal and false
161  representation of the true value of the Property, in order to induce Plaintiff into entering into a
162  predatory loan with Lender.   Appraiser's inaccurate appraisal defrauded Plaintiff by giving
163  Plaintiff the false impression that the property was more valuable than it actually was.  Lender
164  knew, or should have known, that Plaintiff did not have equal access to information concerning
165  the value of the property as Lender would not allow Plaintiff to provide a neutral appraisal of the
166  property.  Lender knew, or should have known, that Plaintiff would have made a different
167  decision if Plaintiff were given a true and accurate appraisal of the property.

168  **APPRAISER**

169      Defendant(s), specifically demanded that the appraiser of their choice be used.  Said
170  appraiser, because of mechanizations of the mortgage industry, works at the pleasure of the
171  mortgage and the borrower is not allowed to use an outside appraiser.  This requirement of the
172  use of appraisers who work exclusively at the behest of the Lender creates a situation that an
173  reasonable person of ordinary prudence would expect to unduly influence the appraiser to
174  produce appraisals which served the Lender's best interest.  In the instant cause, the appraiser

175   improperly appraised the property in order to unduly influence Plaintiff to believe the loan was
176   equitable.

### UNDISCLOSED CLOSING AGENT RELATIONSHIP

178   Defendant(s) added closing agent charges to the principal of the note, for services
179   required by the Lender and made by third party vendors who conducted the loan closing (12 CFR
180   226.4(a)(2)(i)).

181   Closing agent was selected by Lender.  Plaintiff was not adequately advised that Plaintiff
182   could select a closing agent of Plaintiff's choice.  Consequent to the above referenced failure to
183   give clear and conspicuous disclosures, Plaintiff was induced into accepting the closing agent as
184   a neutral and trustworthy professional.

185   By failing to fully disclose the ongoing financial relationship between the closing agent
186   and the Lender, Lender defrauded Plaintiff by non-disclosure.

### CONSPIRACY BETWEEN LENDER AND UNDERWRITER

188   Lender further conspired with Underwriter in order to mislead Plaintiff by an improper
189   approval of a mortgage agreement that failed to meet the requirements of the Real Estate
190   Settlement Procedures Act, Truth in Lending Act, and various and sundry local, state, and federal
191   consumer protection laws.  Said violations as stipulated above, included the assessment of false
192   fees at closing.  The underwriter, acting as the alter ego of Lender, under the guise of checking
193   the note for propriety and correctness, unduly influenced Plaintiff into accepting all the fees
194   charged at closing as true, valid, and accurate.  The underwriter, acting as the alter ego of
195   Lender, acted with culpable knowledge of the impropriety of the false fees charged to Plaintiff,
196   or the underwriter acted with gross negligence.  The underwriter, acting as the alter ego of
197   Lender, defrauded Plaintiff by failing to disclose to Plaintiff that the fees charged to Plaintiff
198   were improper and in violation of standing law.  Lender knew, or should have known, that
199   Plaintiff would have made a different decision had underwriter done a proper job of checking the
200   legality and propriety of the note.  Plaintiff was harmed by the negligence or fraud of
201   underwriter.

### CLOSING AGENT ALLOWED FALSE FEES

203   Closing Agent, acting as trustee, failed to notify Plaintiff that many, if not all fees
204   charged to Plaintiff were either totally false, unauthorized to be charged, or included undisclosed
205   markups on amounts charged by third party vendors.  Closing Agent, acting as trustee, allowed
206   insufficient time for Plaintiff to read and understand the large stack of documents put before
207   Plaintiff at closing.  Closing Agent, acting as trustee, took unfair advantage of the trust

208   engendered in Plaintiff by Closing Agent's position as trustee and failed to give Plaintiff full
209   disclosure if the improper nature of the fees charged at closing in violation of 12 CFR
210   226.4(a)(1)(ii)).

211   **NOTICES WITHHELD TO DEFRAUD PLAINTIFF**

212   Lender, at and before settlement, failed to provide statutorily mandated notices to
213   borrower, by failing to provide each of the specific notifications listed herein, to include but not
214   limited to:

215   No HUD 1 Booklet provided within three days after the loan application was made to the
216   Lender;

217   Good Faith Estimate not timely provided;

218   Good Faith Estimate not accurate within specified limits;

219   No holder rule warning in note;

220   Right to rescind not clearly made;

221   Principal and interest on note not clearly highlighted or readily visible;

222   Failed to include the FTC Holder Warning (16 CFR 433) in the note document.

223   **UNDISCLOSED MARKUP**

224   Lender, at closing, while acting in concert and collusion with Underwriter and Closing
225   Agent, assessed  undisclosed markups to Plaintiff over the amounts charged by vendors who
226   performed services connected with the loan closing and added said undisclosed markups to the
227   principal on which the above referenced defendants intended that Plaintiff  pay interest for the
228   term of the note (12 CFR 226.4(a)(2(ii)).

229   **BROKER FEE IMPROPERLY ADDED TO PRINCIPAL**

230   *LENDER, ACTING IN CONCERT AND COLLUSION WITH UNDERWRITER AND CLOSING AGENT,*
231   *ASSESSED A BROKER FEE TO PLAINTIFF AS CLOSING IN THE AMOUNT OF $14,346.40, AND ADDED SAID*
232   *AMOUNT TO THE PRINCIPAL OF THE NOTE FOR WHICH THE DEFENDANT(S) INTENDED TO CHARGE*
233   *PLAINTIFF INTEREST FOR THE FULL TERMOF THE NOTE (SEE SPECIAL RULE 12 CFR 226.4(A)(3)).*

234   **CONSPIRACY BETWEEN CLOSING AGENT AND LENDER**

235   Closing Agent conspired with Lender to create a condition at closing intended to deny
236   Plaintiff full disclosure by contriving to pressure Plaintiff into signing a multitude of documents

237  in a short and pressured time frame in order to prevent Plaintiff from having time to fully
238  understand the alleged disclosures and stipulations Plaintiff was induced to sign.

239      Closing Agent failed to insure that all documents were properly prepared and in
240  compliance with all relevant consumer protection laws.

241      Closing Agent intentionally pressured Plaintiff to read and attempt to understand a stack
242  of mostly irrelevant documents for the express purpose of rendering Plaintiff susceptible to
243  undue pressure to enter into a predatory loan product to the detriment of Plaintiff.

244  ***UNSUPPORTED CLAIM OF AGENCY BY LENDER***

245      The identity of the current holder (otherwise known as the real party in interest) of the
246  promissory note alleged to have been created by Plaintiff is unknown to Plaintiff.  In a hearing
247  held by telephone, Wells Fargo admitted to the court that the note had been securitized.
248  Securitization means that the original lender sold or otherwise transferred ownership of the note
249  to another party.  The common practice in the industry concerning the securitization of notes
250  involves a numerous transfers or assignments of the note from one party to another.  In as much
251  as Wells Fargo has stipulated to the securitization of the note, it is incumbent upon Wells Fargo,
252  before they deprive Plaintiff of Plaintiff's property that Wells Fargo prove that it is the current
253  holder of the note and the deed of trust.

254      By plaintiff's original complaint challenged standing of Wells Fargo and demands that
255  Wells Fargo prove up its standing to enforce the deed of trust through a showing that Wells
256  Fargo is a valid holder of both the deed of trust and the note.

257      Subsequent to Lender's failure to identify the real party in interest as contemplated by
258  Uniform Commercial Code 3-501, Lender is statutorily estopped from pursuing collection on the
259  promissory note alleged to have been created by Plaintiff as Plaintiff is authorized to cease all
260  payments without dishonor until such time as Lender complies with all tenants of the alleged
261  promissory note and all applicable law.

262      Lender entered into a sales contract with an as yet unknown party for the sale of the
263  promissory note alleged to have been created by Plaintiff yet failed to publicly record said sale
264  with the clerk of the court.

265      Lender, in the capacity of the current servicer of the alleged promissory note, claims
266  agency to act in the place of the real party in interest on the above referenced security instrument.

267      Plaintiff, at closing, was given a photocopy of the original note signed by Plaintiff.

268     Plaintiff, at the time of closing, bolstered by the state of false trust in the "trustee" and
269     others, was not noticed or aware that Lender could have produced multiple originals of the
270     promissory note document.

271     Lender took the original promissory note out of sight of Plaintiff and allegedly made a
272     true and accurate copy and provided said copy to Plaintiff.

273     With the current state of technology, there is no way for Plaintiff to tell if the copy
274     provided to Plaintiff by Trustee was a true and correct copy of the promissory note allegedly
275     signed by Plaintiff.

276     Lender then retained the only original of the promissory note signed by Plaintiff.

277     Lender, upon request of Plaintiff, has failed to produce the original promissory note
278     signed by Plaintiff for examination.

279     The failure of Lender to produce, for inspection, as contemplated by Uniform
280     Commercial Code 3-501, an original promissory note creates the adverse inference that no such
281     note is in the possession of Lender

282     Lender, or current servicer, has failed to prove that Lender is a true agent of the principal
283     holder of the above referenced security instrument.

284     Plaintiff has reason to believe and does believe that the security instrument does not exist
285     and was deliberately destroyed by an agent of the real party in interest.

286     To the knowledge of Plaintiff, there exists only photo copies of the original security
287     instrument that could have been easily altered to favor Lender with covenants not present in the
288     original signed by Plaintiff.

289     ***SECURITIZATION PRACTICES VOID CONTRACT***

290     The original note contained a provision for modification of the original loan agreement.

291     The modification provision of the note has been rendered unenforceable as there is no
292     one known to Plaintiff who has authority to authorize a modification of the original contract.

293     By secretly selling the note as a security instrument, Defendant(s) have nullified a
294     provision of the contract which authorizes modification of the note.

295     Plaintiff, having reason to believe that fraud was involved in the creation of the loan
296     instruments, has a claim against the real party in interest, and thereby, has need to know all
297     parties who have received enrichment from the proceeds of said security instrument.

298    In as much as, in the case of a security instrument created from a note which is the result
299    of a consumer transaction, there can be no holder in due course and, according to the Federal
300    Trade Commission Holder Rule, 16 CFR 433, and 12 CFR 226 (Regulation Z), the holder of the
301    such security instrument stands in the shoes of the Lender and is subject to any claim Plaintiff
302    would have on the Lender, Plaintiff has a right to know the identity of any person or entity
303    currently claiming, or who has ever claimed real party interest in said security instrument.

304    *NOTE POOLED AND LOST*

305    At a point in time unknown to Plaintiff, either prior to or subsequent to the close of
306    escrow on their respective loans, Defendants did place or caused to be placed the original
307    promissory note executed by Plaintiff into a pool with multiple other such notes.

308    Said pooled notes were sold to one or more investors through securitized transactions
309    without Plaintiff's knowledge or consent and to Plaintiff's detriment.

310    The above sale transactions were not filed in the public record of the clerk of the county.

311    The above referenced pooled notes were repeatedly resold to numerous other investors.

312    *AGENT LACKS AGENCY*

313    It is the belief and specific allegation of Plaintiff that the alleged agent for the lender is
314    not the agent for the lender, but rather, is an unauthorized intervener who merely claims agency
315    for the purpose of defrauding Plaintiff of Plaintiff's property.   It is the further belief and
316    allegation of Plaintiff that the alleged agent for the lender has no contract to with the real party in
317    interest on the note and, therefore, has no agency to represent said real party in interest.

318    *REAL PARTY IN INTEREST UNKNOWN AND UN-PROVABLE*

319    The above referenced security instrument was filed with Mortgage Electronic
320    Registration Services (hereinafter referred to as "MERS"); a company purportedly established
321    for the purpose of registering mortgage as a security instrument.  Plaintiff alleges that MERS
322    scanned the original security instrument into their electronic system, and then destroyed the
323    original security instrument.

324    The pooled notes that included Plaintiff's original contract became lost, either as a result
325    of deliberate intent or the misconduct of the investors to whom they were sold.    It has become
326    impracticable to the point of being impossible to trace the location, the possessor, or the actual
327    holders(s) of the original promissory note.

328   ***ASSIGNMENT OF NOTE IS FRAUD***

329   Plaintiff alleges and is prepare to prove at trial that the alleged assignment of standing to
330   enforce the note to Current Servicer is a fraud on the court as said instrument fails to identify the
331   real party in interest and does not contain evidence, affirmed and verified by the current principal
332   on the note granting agency to Current Servicer.

333   It is the assertion and allegation of Plaintiff that the alleged assignment presented by
334   Current Servicer, was not made by the real party in interest, but rather, by an employee of the
335   servicer bank, or some other person specifically designated to impersonate the real party in
336   interest.  Therefore, it is the allegation of Plaintiff that the Current Servicer lack legal standing to
337   enforce the note and, therefore, are unable to invoke the subject matter jurisdiction of the court.

338   ***RESPA PENALTIES***

339   From a cursory examination of the records, with the few available, the apparent RESPA
340   violations are as follows:

341   Good  Faith Estimate not within limits

342   No HUD-1 Booklet

343   Truth In Lending Statement not within limits compared to Note

344   Truth in Lending Statement not timely presented

345   HUD-1 not presented at least one day before closing

346   No Holder Rule Notice in Note

347   No 1st Payment Letter

348   No signed and dated :

349   Financial Privacy Act Disclosure;

350   Equal Credit Reporting Act Disclosure;

351   notice of right to receive appraisal report;

352   servicing disclosure statement;

353   borrower's Certification of Authorization;

354   notice of credit score;

355   RESPA servicing disclosure letter;

356         loan discount fee disclosure;

357         business insurance company arrangement disclosure;

358         notice of right to rescind.

359         The courts have held that the borrower does not have to show harm to claim a violation

360 of the Real Estate Settlement Procedures Act, as the Act was intended to insure strict

361 compliance.  And, in as much as the courts are directed to assess a penalty of no less than two

362 hundred dollars and no more than two thousand, considering the large number enumerated here,

363 it is reasonable to consider that the court will assess the maximum amount for each violation.

364         Since the courts have held that the penalty for a violation of RESPA accrues at

365 consummation of the note, borrower has calculated that, the number of violations found in a

366 cursory examination of the note, if deducted from the principal, would result in an overpayment

367 on the part of the borrower, over the life of the note, of $359,922.51.

368         If the violation penalty amounts for each of the unsupported fees listed above are

369 included, the amount by which the borrower would be defrauded is $315,104.28

370 ***ADDING IN RESPA PENALTIES FOR ALL THE UNSUPPORTED SETTLEMENT FEES ALONG WITH THE***

371 ***TILA/NOTE VARIANCE, IT APPEARS THAT LENDER INTENDED TO DEFRAUD BORROWER IN THE***

372 ***AMOUNT OF $843,304.68 LIEN IS VOID***

373         Lender sold the security instrument immediately after closing and received consideration

374 in an amount in excess of the lien held by Lender.  Since Lender retained the lien document upon

375 the sale of the security instrument, Lender separated the lien from said security instrument,

376 creating a fatal and irreparable flaw.

377         When Lender received consideration while still holding the lien and said consideration

378 was in excess of the amount of the lien, Lender was in a position such that he could not be

379 harmed and could not gain standing to enforce the lien.  The lien was, thereby, rendered void.

380         Since the separation of the lien from the security instrument creates such a considerable

381 concern, said separation certainly begs a question: "Why would the Lender retain the lien when

382 selling the security instrument?"

383         When you follow the money the answer is clear.  The Lender will hold the lien for three

384 years, then file and IRS Form 1099a and claim the full amount of the lien as abandoned funds

385 and deduct the full amount from Lender's tax liability, thereby, receiving consideration a second

386 time.

387       Later, in the expected eventuality of default by Plaintiff, Lender then claimed to transfer

388    the lien to the holder of the security, however, the lien once satisfied, does not gain authority just

389    because the holder, after receiving consideration

390    ***LENDER PROFIT BY CREDIT FAULT SWAP DERIVATIVES***

391       Lender, as motivation for the above referenced fraud, further stood to profit by credit

392    fault swaps in the derivatives market, by way of inside information that Lender had as a result of

393    creating the faulty loans sure to default.  Lender was then free to invest on the bet that said loan

394    would default and stood to receive unjust enrichment a third time.  This credit default swap

395    derivative market scheme is almost totally responsible for the stock market disaster we now

396    experience as it was responsible for the stock market crash in 1907.

397    ***TILA AND RESPA SUBJECT TO EQUITABLE TOLLING***

398       The Limitations Period for Plaintiffs' Damages Claims under TILA and RESPA should

399    be Equitably Tolled due to the DEFENDANTS' Misrepresentations and Failure to Disclose.

400       Defendants Homecomings is correct to assert that claims for statutory and other money

401    damages under the Truth in Lending Act *(15 U.S.C. § 1601,* et. seq.) and under the Real Estate

402    Settlement Procedures Act *(12 U.S.C. § 2601* et. seq.) the time a claimant has to raise a claim

403    under RESPA is two years or until full disclosure.  The above allegations of fraud by non-

404    disclosure toll the limitations.  Further, such claims are subject to the equitable tolling doctrine.

405    The Ninth Circuit has interpreted the TILA limitations period in § 1640(e) as subject to equitable

406    tolling. In *King v. California, 784 F.2d 910 (9th Cir.1986),* the court held that given the remedial

407    purpose of TILA, the limitations period should run from the date of consummation of the

408    transaction, but that "the doctrine of equitable tolling may, in appropriate circumstances, suspend

409    the limitations period until the borrower discovers or has reasonable opportunity to discover the

410    fraud or nondisclosures that form the basis of the TILA action." *King v. California, 784 F.2d*

411    *910, 915 9t*h Cir. 1986).

412       Likewise, while the Ninth Circuit has not taken up the question whether *12 U.S.C. §*

413    *2614,* the anti-kickback provision of **RESPA,** is subject to equitable tolling, other Courts have

414    held that such limitations period may be equitably tolled. The Court of Appeals for the District of

415    Columbia held that § 2614 imposes a strictly jurisdictional limitation, *Hardin v. City Title &*

416    *Escrow Co., 797 F.2d 1037, 1039-40 (D.C. Cir. 1986),* while the Seventh Circuit came to the

417    opposite conclusion. *Lawyers Title Ins. Corp. v. Dearborn Title Corp., 118 F.3d 1157, 1164 (7th*

418    *Cir. 1997).* District courts have largely come down on the side of the Seventh Circuit in holding

419    that the one-year limitations period in § 2614 is subject to equitable tolling. See, e.g., *Kerby v.*
420    *Mortgage Funding Corp., 992 F.Supp. 787, 791-98 (D.Md.1998); Moll v. U.S. Life Title Ins. Co.,*
421    *700 F.Supp. 1284, 1286-89 (S.D.N.Y.1988).* Importantly, the Ninth Circuit, as noted above, has
422    interpreted the TILA limitations period in *15 U.S.C. § 1640* as subject to equitable tolling; the
423    language of the two provisions is nearly identical. *King v. California, 784 F.2d at 914.* While not
424    of precedential value, this Court has previously found both the TILA and **RESPA** limitations
425    periods to be subject to equitable tolling. *Blaylock v. First American Title Ins. Co., 504*
426    *F.Supp.2d 1091,* (W.D. Wash. 2007). 1106-07.

427        The Ninth Circuit has explained that the doctrine of equitable tolling "focuses on
428    excusable delay by the Plaintiff," and inquires whether "a reasonable Plaintiff would ... have
429    known of the existence of a possible claim within the limitations period." *Johnson v. Henderson,*
430    *314 F.3d 409, 414 (9th Cir.2002), Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th*
431    *Cir.2000).* Equitable tolling focuses on the reasonableness of the Plaintiff's delay and does not
432    depend on any wrongful conduct by the Defendants. Santa Maria. at 1178.

433                              **CLAIM TO QUIET TITLE.**

434        Plaintiff properly averred a claim to quiet title. Plaintiff included both the street address,
435    and the Assessor's Parcel Number for the property.  Plaintiff has set forth facts concerning the
436    title interests of the subject property.  Moreover, as shown above, Plaintiff's claims for rescission
437    and fraud are meritorious. As such, Plaintiff's bases for quiet title are meritorious as well.

438        Defendants' claims are without any right, and Defendants have no title, estate, lien, or
439    interest in the Subject Property in that purported power of sale contained in the Deed of Trust is
440    of no force or effect because Defendants' security interest in the Subject Property has been
441    rendered void and that the Defendants are not the holder in due course of the Promissory Note..
442    Moreover, because Plaintiff properly pled all Defendants' involvement in a the fraudulent
443    scheme, all Defendants are liable for the acts of its co-conspirators,

444    "a Plaintiff is entitled to damages from those Defendants who concur in the tortious scheme with
445    knowledge of its unlawful purpose." *Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 157 Cal.*
446    *Rptr. 392, 598 P.2d 45 (1979); Novartis Vaccines and Diagnostics, Inc. v. Stop Huntingdon*
447    *Animal Cruelty USA, Inc., 143 Cal. App. 4th 1284, 50 Cal. Rptr. 3d 27 (1st Dist. 2006); Kidron v.*
448    *Movie Acquisition Corp., 40 Cal. App. 4th 1571, 47 Cal. Rptr. 2d 752 (2d Dist. 1995).*

449                            **CAUSES OF ACTION**

450    ***BREACH OF GOOD FAITH AND FAIR DEALINGS***

451            Plaintiff, being an unsophisticated purchaser and being aware that there existed a number

452    of consumer protection laws in place to protect consumers from unscrupulous and underhanded

453    tactics by licensed professionals, was deceived into believing Plaintiff could trust said licensed

454    professionals to provide good faith and fair dealings with Plaintiff.  *Slover v. State Board of*

455    *Clinical Social Workers, 144 Or.App. 565, 572, 927 P.2d 1098 (1996).*

456    ***FRAUD BY NON-DISCLOSURE BY LENDER***

457            Lender, in acts of fraud by non-disclosure, advised Plaintiff of some of the costs

458    associated with the loan while failing to give full disclosure.  Lender assured Plaintiff that the

459    loan product would be far less costly than defendants knew or should have known said loan

460    product would turn out to be.  Lender failed to provide full disclosure of the true nature of all the

461    costs to Plaintiff.  Lender knew that Plaintiff did not have equal access to information as Lender.

462    Lender took unfair advantage of Plaintiff's expectation of good faith and fair dealings created by

463    Lender's special status as a company doing business under a license.

464            Plaintiff, acting in good faith reliance on representations made by Lender, made the

465    decision to purchase the Property. Plaintiff was harmed as a result of the failure on the part of

466    Lender to give full disclosure.

467    ***BREACH OF FIDUCIARY DUTY***

468            It is the specific allegation of Plaintiff that, Broker conspired with Lender to receive

469    commissions in excess of the 1% maximum allowed by the Real Estate Settlement Procedures

470    Act.  In order to help insure that Broker, while acting as agent for Plaintiff,  would act in good

471    faith toward Plaintiff and seek out the best loan product for Plaintiff.  Lender, acting in direct

472    violation of Regulation Z, extended a loan origination fee to Broker in excess of the 1% allowed

473    by law.  Broker, subsequently, in an act of "breach of fiduciary duty," represented the note to

474    plaintiff as the best loan available to Plaintiff.

475

476    ***BREACH OF FIDUCIARY DUTY***

477            Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every

478    allegation contained in all of the paragraphs of the General Allegations and Facts Common to All

479    Causes of Action as though the same were set forth herein.

480    Defendants Agent, appraiser, trustee, Lender, et al, and each of them, owed Plaintiff a
481    fiduciary duty of care with respect to the mortgage loan transactions and related title activities
482    involving the Trust Property.

483    Defendants breached their duties to Plaintiff by, *inter alia,* the conduct described above.
484    Such breaches included, but were not limited to, ensuring their own and Plaintiffs' compliance
485    with all applicable laws governing the loan transactions in which they were involved, including
486    but not limited to, TILA, HOEPA, **RESPA** and the Regulations X and Z promulgated there
487    under.

488    Defendants' breaches of said duties was a direct and proximate cause of economic and
489    non-economic harm and detriment to Plaintiffs.

490    Plaintiff did, in fact, suffer economic and non-economic harm and detriment as a result of
491    such conduct, all to be shown according to proof at trial of this matter.

492    ***CAUSE OF ACTION - NEGLIGENCE/NEGLIGENCE PER SE***

493    Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every
494    allegation contained in all of the paragraphs of the General Allegations and Facts Common to All
495    Causes of Action as though the same were set forth herein.

496    Defendants owed a general duty of care with respect to Plaintiffs, particularly concerning
497    their duty to properly perform due diligence as to the loans and related transactional issues
498    described hereinabove.

499    In addition, Defendants owed a duty of care under TILA, HOEPA, **RESPA** and the
500    Regulations X and Z promulgated there under to, among other things, provide proper disclosures
501    concerning the terms and conditions of the loans they marketed, to refrain from marketing loans
502    they knew or should have known that borrowers could  not afford or maintain, and to avoid
503    paying undue compensation such as "yield spread premiums" to mortgage Agents and loan
504    officers.

505    Defendants knew or in the exercise of reasonable care should have known, that the loan
506    transactions involving Plaintiff and other persons similarly situated were defective, unlawful,
507    violated  federal and state laws and regulations, and would subject Plaintiff to economic and non-
508    economic harm and other detriment.

509    Plaintiff is among the class of persons that TILA, HOEPA, **RESPA** and the Regulations
510    X and Z promulgated there under were intended and designed to protect, and the conduct alleged

511  against Defendants FIDELITY, CITIGROUP, and HOMEQ, and each of them is the type of
512  conduct and harm which the referenced statutes and regulations was designed to deter.

513      As a direct and proximate result of Defendant's negligence, Plaintiff suffered economic
514  and non-economic harm in an amount to be shown according to proof at trial.

515  ***COMMON LAW FRAUD***

516      Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every
517  allegation contained in all of the paragraphs of the General Allegations and Facts Common to All
518  Causes of Action as though the same were set forth herein.

519      If any Defendants misrepresentations made herein were not intentional, said
520  misrepresentations were negligent. When the Defendants made the representations alleged
521  herein, he/she/it had no reasonable ground for believing them to be true.

522      Defendants made these representations with the intention of inducing Plaintiff to act in
523  reliance on these representations in the manner hereafter alleged, or with the expectation that
524  Plaintiff would so act.

525      Plaintiff  is informed and believes that Defendant et al, facilitated, aided and abetted
526  various Defendants  in their negligent misrepresentation, and that various Defendants   was
527  negligent in not implementing procedures such as underwriting standards oversight that would
528  have prevented various Defendants   from facilitating the irresponsible and wrongful
529  misrepresentations of various Defendants to Defendants .

530      Plaintiff  is informed and believes that Defendant acted in concert along with other others
531  named herein in promulgating  false representations to cause Plaintiff  to enter into the LOAN
532  without knowledge or understanding of the terms thereof.

533      As a proximate result of the negligent misrepresentations of Defendants as herein alleged,
534  the Plaintiff  sustained damages, including monetary loss, emotional distress, loss of credit, loss
535  of opportunities, attorney fees and costs, and other damages to be determined at trial. As a
536  proximate result of Defendants' breach of duty and all other actions as alleged herein, Defendants
537  has suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, and
538  mental and physical pain and anguish, all to Plaintiff's damage in an amount to be established at
539  trial;

540 ***FRAUD BY NON-DISCLOSURE***

541    Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every
542 allegation contained in all of the paragraphs of the General Allegations and Facts Common to All
543 Causes of Action as though the same were set forth herein.

544    Claimant made representation to Plaintiff that Claimant had authority to exercise
545 foreclosure on the deed of trust and mortgage note agreement entered into between Claimant and
546 Plaintiff.

547    Claimant not the real party in interest of the mortgage note upon authority of which
548 Defendants claimed authority.

549    Defendant had a duty to reveal to Plaintiff that Claimant was not the real party in interest
550 of the security interest that would give Claimant standing to foreclose on the property at issue.

551    The fact that Claimant was not the real party in interest of the mortgage note was
552 material to standing of Defendants to exercise the authority Defendants claimed.

553    Plaintiff was ignorant of the fact that Claimant was not the real party in interest of the
554 necessary security interest, neither did Plaintiff have equal opportunity to discover the fact of the
555 sale of the security interest by Claimant.

556    Claimant was deliberately silent when they had a duty to speak.

557    By failing to disclose the above referenced facts, Claimant intended that Plaintiff should
558 rely on Claimant claimed authority to sell the personal property of Plaintiff and force Plaintiff to
559 vacate Plaintiff's primary place of residence.

560    Plaintiff relied on Claimant's nondisclosure and was injured as a result of acting without
561 the knowledge of the undisclosed facts.

562 ***FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.***

563    Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every
564 allegation contained in all of the paragraphs of the General Allegations and Facts Common to All
565 Causes of Action as though the same were set forth herein.

566    Plaintiff properly pled Defendant(s) violated the breach of implied covenant of good faith
567 and fair dealing. "Every contract imposes upon each party a duty of good faith and fair dealing in
568 its performance and its enforcement." *Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 478, 261*
569 *Cal. Rptr. 735 (1989);* Rest.2d Contracts § 205. A mortgage Agent has fiduciary duties. *Wyatt v.*
570 *Union Mortgage Co., (1979) 24 Cal. 3d. 773.* Further, In *Jonathan Neil & Associates, Inc. v*
571 *Jones, (2004) 33 Cal. 4th 917,* the court stated:

572       In the area of insurance contracts the covenant of good faith and fair dealing has taken on
573 a particular significance, in part because of the special relationship between the insurer and the
574 insured. The insurer, when determining whether to settle a claim, must give at least as much
575 consideration to the welfare of its insured as it gives to its own interests. . . The standard is
576 premised on the insurer's obligation to protect the insured's interests . . . *Id. at 937.*

577       Likewise, there is a special relationship between an agent and borrower. "A person who
578 provides services to a borrower in a covered loan transaction by soliciting Lenders or otherwise
579 negotiating a consumer loan secured by real property, is the fiduciary of the consumer...this
580 fiduciary duty [is owed] to the consumer regardless of whom else the agent may be acting as an
581 agent for . . . The fiduciary duty of the agent is to deal with the consumer in *good faith.* If the
582 *Agent knew or should have known that the Borrower will or has a likelihood of defaulting ... they*
583 *have a fiduciary duty to the borrower not* to place them in that loan." (California Department of
584 Real Estate, *Section 8: Fiduciary Responsibility,* www.dre.ca.gov). [*Emphasis Added*].

585       All Defendant(s), willfully breached their implied covenant of good faith and fair dealing
586 with Plaintiff when Defendant(s): (1) Failed to provide all of the proper disclosures; (2) Failed to
587 provide accurate Right to Cancel Notices; (3) Placed Plaintiff into the current loan product
588 without regard for other more affordable products; (4) Placed Plaintiff into a loan without
589 following proper underwriting standards; (5) Failed to disclose to Plaintiff that Plaintiff was
590 going to default because of the loan being unaffordable; (6) Failed to perform valid and /or
591 properly documented substitutions and assignments so that Plaintiff could ascertain her rights
592 and duties; and (7) Failed to respond in good faith to Plaintiff's request for documentation of the
593 servicing of her loan and the existence and content of relevant documents. Therefore, due to the
594 special relationship inherent in a real estate transaction between Agent and borrower, *and* all
595 Defendant(s) participation in the conspiracy.

596 ***CAUSE OF ACTION VIOLATION OF TRUTH IN LENDING ACT 15 U.S.C. §1601 ET SEQ***

597       Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every
598 allegation contained in all of the paragraphs of the General Allegations and Facts Common to All
599 Causes of Action as though the same were set forth herein.

600       This consumer credit transaction was subject to the Plaintiff's right of rescission as
601 described by *15 U.S.C. § 1635*(a) and Regulation Z § 226.23 (12 C.F.R. § 226.23).

602       More particularly, the same Defendants violated *15 U.S.C. § 1635*(a) and
603 Regulation Z § 226.23(b) with regards to the purported Notice of Right to Cancel. As a

604   consequence of this action, the Notice of Right to Cancel documentation was not provided
605   to Plaintiff or if furnished, to Plaintiff it failed to: Correctly identify the transaction;
606   Clearly and conspicuously disclose the Plaintiff's right to rescind the transaction three days
607   after delivery of all required disclosures; Clearly and conspicuously disclose how to
608   exercise the right to rescind the transaction, with a form for that purpose; Clearly and
609   conspicuously disclose the effects of rescission; Clearly and conspicuously disclose the
610   date the rescission period expired.

611    Furthermore, Plaintiff is informed and believes that Defendants violated TILA at
612   the time of origination because, among other things: Multiple GFE's used to mislead and
613   confuse borrower about actual terms of Notes; over $28,000.00 in yield spread premium
614   paid outside closing and additional unknown amounts in YSP/POC fees.

615    Plaintiff is informed and believes that Defendant's violation of the provisions of law
616   rendered the credit transaction null and void, invalidates Defendant's claimed interest in the
617   Subject Property, and entitles Plaintiff to damages as proven at trial.

618   ***INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS***

619    The conduct committed by Defendants, driven as it was by profit at the expense of
620   increasingly highly leveraged and vulnerable consumers who placed their faith and trust in the
621   superior knowledge and position of Defendants, was extreme and outrageous and not to be
622   tolerated by civilized society.

623    Defendants either knew that their conduct would cause Plaintiff to suffer severe
624   emotional distress, or acted in conscious and/or reckless disregard of the probability that such
625   distress would occur.

626    Plaintiff did in fact suffer severe emotional distress as an actual and proximate result of
627   the conduct of Defendants as described hereinabove.

628    As a result of such severe emotional distress, Plaintiff suffered economic and non
629   economic harm and detriment, all to be shown according to proof at trial of this matter.

630    Plaintiff demands that Defendants provide Plaintiff with release of lien on the lien signed
631   by Plaintiff and secure to Plaintiff quite title;

632    Plaintiff demands Defendants disgorge themselves of all enrichment received from
633   Plaintiff as payments to Defendants based on the fraudulently secured promissory note in an
634   amount to be calculated by Defendants and verified to Plaintiff;

635  Plaintiff further demands that Defendants pay to Plaintiff an amount equal to the amount
636  Defendants intended to defraud Plaintiff of which amount Plaintiff calculated to be equal to
637  $945,312.84;

638                                    **SUFFICIENCY OF PLEADING**

639  Plaintiff has sufficiently pled that relief can be granted on each and every one of the
640  Complaint's causes of action. Federal Rule of Civ. Procedure 12(b)(6) provides for dismissal if a
641  Plaintiff fails to state a claim upon which relief can be granted. A complaint should not be
642  dismissed "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support
643  of her claim which would entitle her to relief." *Housley v. U.S. (9th Cir. Nev. 1994) 35 F.3d 400,*
644  *401.* "All allegations of material fact in the complaint are taken as true and construed in the light
645  most favorable to Plaintiff." *Argabright v. United States, 35 F.3d 1476, 1479 (9th Cir. 1996).*

646  Attendant, the Complaint includes a "short, plain statement, of the basis for relief." Fed. Rule Civ.
647  Proc. 8(a). The Complaint contains cognizable legal theories, sufficient facts to support cognizable legal
648  theories, and seeks remedies to which Plaintiff is entitled.   *Balistreri v. Pacifica Police Dept., 901 F.2d*
649  *696, 699 (9th Cir. 1988); King v. California, 784 F.2d 910, 913 (9th Cir. 1986).* Moreover, the legal
650  conclusions in the Complaint can and should be drawn from the facts alleged, and, in turn, the court
651  should accept them as such. *Clegg v. Cult Awareness Network, 18 F.3d 752* (9th Cir, 1994). Lastly,
652  Plaintiff's complaint contains claims and has a probable validity of proving a "set of facts" in support of
653  their claim entitling them to relief. *Housley v. U.S. (9th Cir. Nev. 1994) 35 F.3d 400, 401.* Therefore,
654  relief as requested herein should be granted.

655                                          **PRAYER**
656  WHEREFORE, Petitioner prays for judgment against the named Defendants, and each of
657  them, as follows:

658  For an emergency restraining order enjoining lender and any successor in interest
659  from foreclosing on Petitioner's Property pending adjudication of Petitioner's claims set
660  forth herein;

661  For a permanent injunction enjoining Defendants from engaging in the fraudulent,
662  deceptive, predatory and negligent acts and practices alleged herein;

663  For quiet title to Property;

664  For rescission of the loan contract and restitution by Defendants to Petitioner
665  according to proof at trial;

666  For disgorgement of all amounts wrongfully acquired by Defendants according to
667  proof at trial;

668  For actual monetary damages in the amount $945,312.84;

669               For pain and suffering due to extreme mental anguish in an amount to be

670    determined at trial.

671               For pre-judgment and post-judgment interest according to proof at trial;

672               For punitive damages according to proof at trial in an amount equal to

673    $1,997,734.17.

674               For attorney's fees and costs as provided by statute; and,

675               For such other relief as the Court deems just and proper.

676

677

678    **Respectfully Submitted,**

679

680

681    **Susan Carlsen**